HOLBROOK, The JOHN E.  See Case No. 7,-339.

## Case No. 6,598.

### Ex parte HOLCOMB.

[2 Dill. 392.] [1]

Circuit Court, D. Minnesota. 1871.

CRIMINAL LAW — COUNTERFEITING — PHOTOGRAPHING UNITED STATES SECURITIES.

1. It is a criminal act under the legislation of congress (13 Stat. 222, § 11), to photograph or execute likenesses of United States treasury notes, although the similarity between the photograph and the original be not such that it is calculated to deceive the public.

2. Manufacture of coins of original design (see note).

Holcomb, having been held to bail by a commissioner for having in his possession miniature photographs of United States treasury notes, about the size of a twenty-five cent issue of fractional currency, applied to Mr. District Judge NELSON for his discharge on habeas corpus.

Mr. Head, for relator.
Mr. Davis, Dist. Atty., for the United States.

NELSON, District Judge. The prisoner has been committed, charged with executing a photograph in the likeness of a United States treasury note. The act of congress (13 Stat. 222, § 11), enacts "that if any person shall photograph or execute * * any impression * * in the likeness * * of any obligation of the United States, or any part thereof, * * every person so offending * * shall be punished, etc."

Before the commissioner the government's counsel introduced several photographs in miniature of United States treasury notes, which were found in the prisoner's possession, with blank spaces for the signatures of the register of the treasury and the treasurer of the United States.

The prisoner's counsel insists that this being all the evidence in the case, no crime has been committed, and a discharge should be granted. He urges that the degree of similarity between the photograph and the original treasury note must be such that it is calculated to impose upon mankind in general, which can not be claimed for these photographs.

I agree that in cases of counterfeiting and forgery, where the intent to deceive or defraud enters into and forms a part of the offence, the counsel has stated the true rule. But the offence created by the statute above cited, and with which the prisoner is charged, is the execution of a photograph impression in the likeness of a United States obligation. The making the picture is the unlawful act, and the intent, whether to use, or deceive, or defraud, has nothing to do with the crime.

There is no pretence that the miniature

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

photographs would, in their present form, deceive, but the likeness, that is, the picture, is accurate. Congress has seen fit to enact many stringent laws in regard to the manufacture of the United States obligations, and has affixed penalties for printing, engraving, and photographing likenesses of any government securities, wrongfully using the plates upon which the originals are printed, and for having the custody and possession of any plate or die which could be used for manufacturing them. These statutory prohibitions are in addition to those punishing the altering and counterfeiting and forging of all United States securities.

I think these laws have been wisely enacted, for in this case, although the miniature notes may not resemble the originals sufficiently to deceive persons of ordinary intelligence, still they purport on their face to be treasury notes unsigned, and from them impressions could be made, equal in size to the original notes. In this way would they facilitate counterfeiting. I remand the prisoner to the custody of the marshal, unless he gives bail in the sum of $500. Ordered accordingly.

NOTE. Manufacture of Coins. The making of coins by individuals, adapted to be used as current money, is prohibited by the legislation of congress. Under the act of June 8, 1864 [13 Stat. 120], prohibiting the making of coins of original designs for use as money, it is not necessary that the coins should be of the denomination or resemble the coins authorized to be made by law. On the subject of the manufacture of coins of original design, the circuit judge gave to the grand jury of the circuit court for the district of Kansas the following special charge, at the June term, 1872:

"Gentlemen of the Grand Jury: For many years prior to 1864 there had been in force an act of congress prohibiting 'the false making or counterfeiting of any coin in resemblance or similitude of the gold and silver coins coined at any mint in the United States.' Act March 3, 1825, § 20 [4 Stat. 121]. Similar provision was made respecting foreign coin current here.

"In 1864, congress passed a further act, providing that 'If any person, except as authorized by law, shall make or pass any coins of gold or silver, or other metal, or alloys of metals, intended for the use and purpose of current money, whether in resemblance of the coins of the United States, or of foreign countries, or of original design, he shall be punished by fine not exceeding three thousand dollars, or by imprisonment not exceeding five years, or both.' Act June 8, 1864.

"The first statute prohibited only the making or counterfeiting of coin in the resemblance or similitude of the regular coin of the United States, or foreign coin current therein. The statute of 1864 is much broader in its terms, and declares it unlawful for any unauthorized person 'to make or pass any coins intended for the use and purpose of current money, whether in resemblance of the coins of the United States, or of foreign countries, or of original design.'

"The meaning of this provision is too plain for controversy. In all countries the subject of coinage is one of governmental regulation. It is so in this country. It is not lawful for private individuals to make coin in the similitude of the government's coin, or of foreign coin current here, even though it should be as pure or worth as much: nor under the act of 1864 is it lawful for private persons to make any coins, whether resembling the government's coin or not, intended for the use and purpose of current money.

"To make any coins of a character that they are adapted to be used for the purpose of current money is absolutely prohibited by the legislation of 1864. If coins, made without authority of the government, are in shape, size, and appearance of a character that they are adapted to be thus used, the intention that they should be so used will and should be inferred from the fact of making and disposing of them in a condition that they may be used for the purpose of current money. Under the statute of 1864, prohibiting the making of coins of original designs for use as money, it is not necessary the coins should be of the denomination or resemble the coins authorized to be made and issued by law.

"I have been shown by the district attorney some coins of the character of the one I here exhibit to you, and have felt it to be my duty to express my views respecting the meaning of the foregoing statutes of the United States. The sample here shown you bears on the obverse side a female head, with thirteen stars, and date, 1871; on the reverse a wreath with the words, 'Half Dollar, Cal.' This coin appears to be gold, and is doubtless made of an alloy of that metal, and is intrinsically worth very much less than a half dollar. All of the gold and silver coin of the United States of the present time are nine hundred thousandths fine; that is, nine hundred parts fine metal, and one hundred parts alloy.

"A sample of coin like that shown you was recently assayed at the mint of the United States, and found to contain only five hundred and twenty parts in a thousand of pure gold, and although purporting on its face to be worth a half dollar to be in fact of the value of just seventeen cents in gold. This coin is made in imitation of the gold dollar, which is the smallest gold coin issued by law, and is calculated, in my opinion, to deceive and defraud the public. since it professes to be a half dollar in money, coined in California, and is adapted to be used and circulated as money; and it is illegal to make and issue it in this shape, or even to pass it as money.

"It is known to the court that you have ignored bills at this term, charging the offences of making and passing such coin in this state, and the court is bound to suppose that in so doing you were justified by the evidence before you. I do not allude to the subject for the purpose of questioning your action as an independent tribunal; but mainly to prevent the unwarranted inference being drawn by the public that coins of the character I have mentioned can be lawfully made or passed as money. I have felt bound to say this in order that it may be known that whoever engages in business of this kind, whatever the motives or purposes, or however otherwise respectable, violates the law of the land, and incurs the risk of prosecution and punishment. It is the duty of the district attorney to bring before grand juries all violations of law of this character, and it is one which he will doubtless perform; and after this explicit declaration of what the law on the subject is, offences against it ought not to be viewed by juries with favor or indulgence."

Subsequently indictments were found, and the manufacture of the coins alluded to in the foregoing charge suppressed.